IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

LEAH P.,[1]

      Plaintiff,

   v.                                                             Civ. No. 21-407 SCY

KILOLO KIJAKAZI,
Acting Commissioner of
Social Security,

      Defendant.

**MEMORANDUM OPINION AND ORDER**

Plaintiff argues that the Commissioner committed error when she denied her claim for disability insurance benefits under the Social Security Act, 42 U.S.C. §§ 401-434. Plaintiff argues that the ALJ engaged in improper picking-and-choosing within medical opinions in violation of *Haga v. Astrue*, 482 F.3d 1205 (10th Cir. 2007). Plaintiff also argues the ALJ failed to perform a proper function-by-function analysis as required by Social Security Ruling 96-8p. The Court disagrees on both counts. As a result, the Court DENIES Plaintiff's Motion To Reverse And Remand For A Rehearing With Supporting Memorandum, Doc. 19, and affirms the decision below.[2]

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

[2] Pursuant to 28 U.S.C. § 636(c), the parties consented to the undersigned to conduct any or all proceedings and to enter an order of judgment. Docs. 4, 10, 11. The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c). The Court reserves discussion of the background, procedural history, and medical records relevant to this appeal for its analysis.

## **APPLICABLE LAW**

A. <u>Disability Determination Process</u>

An individual is considered disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (pertaining to disability insurance benefits); *see also id.* § 1382c(a)(3)(A) (pertaining to supplemental security income disability benefits for adult individuals). The Social Security Commissioner has adopted the familiar five-step sequential evaluation process ("SEP") to determine whether a person satisfies the statutory criteria as follows:

(1) At step one, the ALJ must determine whether the claimant is engaged in "substantial gainful activity."[3] If the claimant is engaged in substantial gainful activity, she is not disabled regardless of her medical condition.

(2) At step two, the ALJ must determine the severity of the claimed physical or mental impairment(s). If the claimant does not have an impairment or combination of impairments that is severe and meets the duration requirement, she is not disabled.

(3) At step three, the ALJ must determine whether a claimant's impairment(s) meets or equals in severity one of the listings described in Appendix 1 of the regulations and meets the duration requirement. If so, a claimant is presumed disabled.

(4) If, however, the claimant's impairments do not meet or equal in severity one of the listings described in Appendix 1 of the regulations, the ALJ must determine at step four whether the claimant can perform her "past relevant work." Answering this question involves three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ considers all of the relevant medical and other evidence and determines what is "the

---

[3] "Substantial work activity is work activity that involves doing significant physical or mental activities." 20 C.F.R. §§ 404.1572(a), 416.972(a). The claimant's "[w]ork may be substantial even if it is done on a part-time basis or if [she] doe[es] less, get[s] paid less, or ha[s] less responsibility than when [she] worked before." *Id.* "Gainful work activity is work activity that [the claimant] do[es] for pay or profit." *Id.* §§ 404.1572(b), 416.972(b).

>  most [the claimant] can still do despite [her physical and mental] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). This is called the claimant's residual functional capacity ("RFC"). *Id.* §§ 404.1545(a)(3), 416.945(a)(3). Second, the ALJ determines the physical and mental demands of the claimant's past work. Third, the ALJ determines whether, given the claimant's RFC, the claimant is capable of meeting those demands. A claimant who is capable of returning to past relevant work is not disabled.
>
> (5) If the claimant does not have the RFC to perform her past relevant work, the Commissioner, at step five, must show that the claimant is able to perform other work in the national economy, considering the claimant's RFC, age, education, and work experience. If the Commissioner is unable to make that showing, the claimant is deemed disabled. If, however, the Commissioner is able to make the required showing, the claimant is deemed not disabled.

*See* 20 C.F.R. § 404.1520(a)(4) (disability insurance benefits); 20 C.F.R. § 416.920(a)(4) (supplemental security income disability benefits); *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005).

The claimant has the initial burden of establishing a disability in the first four steps of this analysis. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). The burden shifts to the Commissioner at step five to show that the claimant is capable of performing work in the national economy. *Id.* A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).

    B.    <u>Standard of Review</u>

This Court must affirm the Commissioner's denial of social security benefits unless (1) the decision is not supported by "substantial evidence" or (2) the ALJ did not apply the proper legal standards in reaching the decision. 42 U.S.C. § 405(g); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Casias*, 933 F.2d at 800-01. In making these determinations, the Court "neither reweigh[s] the

evidence nor substitute[s] [its] judgment for that of the agency.'" *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (internal quotation marks omitted). "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations omitted). "Substantial evidence . . . is 'more than a mere scintilla.'" *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted).

A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record," *Langley*, 373 F.3d at 1118 (internal quotation marks omitted), or "constitutes mere conclusion," *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). The agency decision must "provide this court with a sufficient basis to determine that appropriate legal principles have been followed." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks omitted). Therefore, although an ALJ is not required to discuss every piece of evidence, "[t]he record must demonstrate that the ALJ considered all of the evidence" and "a minimal level of articulation of the ALJ's assessment of the evidence is required in cases in which considerable evidence is presented to counter the agency's position." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996) (internal quotation marks omitted). But where the reviewing court "can follow the adjudicator's reasoning" in conducting its review, "and can determine that correct legal standards have been applied, merely technical omissions in the ALJ's reasoning do not dictate reversal." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012). The court "should, indeed must, exercise common sense." *Id.* "The more comprehensive the ALJ's explanation, the easier [the] task; but [the court] cannot insist on technical perfection." *Id.*

4

## ANALYSIS

Plaintiff raises two arguments for reversal.[4] First, Plaintiff argues improper evaluation of medical opinions. Three medical opinions in this case contained moderate limitations in concentration, persistence, and pace. The ALJ found these opinions persuasive without, Plaintiff contends, incorporating these limitations into the RFC or explaining their absence. As such, this was improper "picking and choosing" within an uncontradicted medical opinion. Second, Plaintiff argues that the ALJ failed to engage in a function-by-function analysis. The ALJ found that Plaintiff can occasionally interact with supervisors and coworkers, but, Plaintiff argues, failed to specify whether those "occasional" interactions would also be "appropriate" interactions. Because the jobs the ALJ identified require "appropriate" interactions, the failure to find Plaintiff can appropriately interact is harmful.

The Court rejects both arguments and affirms the decision below.

### I.     Medical opinions

Plaintiff filed her disability application after March 27, 2017, and thus the significantly revised rules for medical opinions apply to this case. AR 202. For claims filed on or after March 27, 2017, all medical sources can provide evidence that is categorized and considered as medical opinion evidence and subject to the same standard of review. 20 C.F.R. §§ 404.1520c(b), 416.920c(b). The factors of supportability and consistency are the most important factors in determining the persuasiveness of a medical opinion. *Id.* §§ 404.1520c(b)(2), 416.920c(b)(2). "Supportability" examines how closely connected an opinion is to the evidence and explanations presented in that opinion. *Zhu v. Comm'r, SSA*, No. 20-3180, 2021 WL 2794533, at *6 (10th Cir.

---

[4] In her opening brief, Plaintiff also argued constitutional error based on *Seila Law LLC v. Consumer Financial Protection Bureau*, 140 S. Ct. 2183 (2020). Plaintiff withdrew the argument in her reply brief. Doc. 24 at 1.

July 6, 2021).[5] "Consistency" compares a medical opinion to the evidence in the rest of the record. *Id.* An ALJ may, but is not required to, consider other factors such as relationship with the claimant and specialization. *Id.* (citing 20 C.F.R. §§ 404.1520c(c), 416.920c(c)).

In *Haga v. Astrue*, a state agency examining psychological consultant "fill[ed] out a mental RFC form, on which he marked appellant moderately impaired in seven out of ten functional categories." 482 F.3d 1205, 1207 (10th Cir. 2007). While the ALJ's RFC incorporated three of these moderate limitations, it did not incorporate the other four. *Id*. Further, the ALJ did not provide an explanation for rejecting the remaining four moderate limitations and "the evidence on which the ALJ explicitly relied in his decision [did] not imply an explanation." *Id*.

On appeal, the Tenth Circuit noted "it is simply unexplained why the ALJ adopted some of [the doctor]'s restrictions but not others." *Id.* at 1208. Although an "ALJ is entitled to resolve any conflicts in the record," the court stressed that an ALJ must actually identify the evidence that conflicts with the doctor's medical opinion or RFC assessment. *Id.* The Tenth Circuit reinforced this point later that same year when it applied *Haga* to remand where the "ALJ erred in accepting some of the moderate limitations in the Mental RFC form completed by . . . a nonexamining physician, but rejecting others without discussion." *Frantz v. Astrue*, 509 F.3d 1299, 1302-03 (10th Cir. 2007).

Plaintiff argues that the ALJ violated this rule in this case when discussing the opinions of state agency non-examining consultants Bonnie Chavez, PhD and Cathy Simutis, PhD, and consultative examiner Paula Hughson, MD. Doc. 19 at 9-13. The Commissioner argues that there was no "picking and choosing" error in this case because the RFC is compatible with *all* of the

---

[5] The Court cites unpublished Tenth Circuit cases for their persuasive value. *See* 10th Cir. R. 32.1(A) ("Unpublished decisions are not precedential, but may be cited for their persuasive value.").

limitations in the opinions of the three doctors, not just some of the limitations. Doc. 23 at 17-19.[6]

Dr. Chavez found that Plaintiff has a "marked" limitation in the ability to interact with the general public. AR 130. Dr. Chavez assessed "moderate" limitations in the ability to:

- understand and remember detailed instructions;

- carry out detailed instructions;

- maintain attention and concentration for extended periods;

- perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances;

- sustain an ordinary routine without special supervision;

- work in coordination with or in proximity to others without being distracted by them;

- complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods;

- accept instruction and respond appropriately to criticism from supervisors;

- get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and

- to respond appropriately to changes in the work setting.

AR 129-31, 148-50. Dr. Chavez concluded:

> Overall evidence suggests that when claimant is treatment compliant and managed on methadone for substance abuse treatment, she has the capacity to understand, remember and follow basic work instructions. She can concentrate adequately for routine tasks, She can interact on a superficial basis with supervisor and coworkers but not with the general public. She can adapt to routine workplace changes with advanced preparation.

---

[6] The Commissioner does not argue that the prohibition against "picking and choosing" when "weighing" medical opinions is not compatible with the new standard for evaluating medical opinions. The Court therefore also does not consider this possibility.

AR 131, 150 (errors in original).

Dr. Simutis found only a "moderate" limitation in the ability to interact appropriately with the general public. AR 100, 112. Dr. Simutis also found fewer other "moderate" limitations, assessing limitations only in the ability to:

- understand and remember detailed instructions;
- carry out detailed instructions;
- maintain attention and concentration for extended periods;
- work in coordination with or in proximity to others without being distracted by them;
- accept instruction and respond appropriately to criticism from supervisors; and
- get along with coworkers or peers without distracting them or exhibiting behavioral extremes.

AR 99-100, 111-12. Dr. Simutis concluded:

> The claimant can understand, remember, and carry out simple instructions, make simple decisions, attend and concentrate for two hours at a time, interact adequately with co-workers and supervisors, and respond appropriately to changes in a routine work environment.

AR 101, 113. The ALJ found that "the opinions of Drs. Chavez and Simutis [are] generally persuasive" as they are consistent with the record. AR 210.

Examining consultant Dr. Hughson assessed a moderate to marked limitation in the ability to interact with the public. AR 830. She also assessed moderate limitations in the ability to:

- understand and remember detailed or complex instructions;
- carry out instructions;
- attend and concentrate;
- work without supervision;
- interact with coworkers;

8

- interact with supervisors; and
- adapt to changes in the workplace.

AR 830. Dr. Hughson also remarked: "While she has sufficient intelligence and cognitive ability to understand, remember, and perform simple work tasks, she does not see herself as capable and it is hard to envision a situation where she would seek to work, other than court ordered." AR 829. The ALJ found this opinion "generally consistent with the record" and "persuasive." AR 210-11.

The ALJ assessed an RFC for "SVP[7] 1 or 2 jobs, with no fast paced production work, can tolerate occasional changes to the work setting, can occasionally interact with co-workers and supervisors, but can rarely interact with the general public, defined as less than 10 percent (10%) of the workday." AR 207. Plaintiff argues this RFC does not match the doctors' opinions as outlined above, arguing that this RFC "rejected the limitations indicated in the areas of concentration, maintaining attendance and punctuality, and completing a workday and workweek." Doc. 19 at 11. Plaintiff relies on *Haga*, arguing that the ALJ was required to either adopt these limitations or explain why. *Id.*

After *Haga*, some district courts (and unpublished Tenth Circuit opinions) found that a limitation to unskilled work does not necessarily incorporate findings that an individual has such a wide variety of moderate mental limitations. Doc. 19 at 12 (citing cases). These cases held that an ALJ, therefore, is required to include these limitations into the RFC or explain their absence. *Id.* Plaintiff in this case observes that the complexity of the work (SVP 1 or 2) does not necessarily have anything to do with whether a person can sustain a normal workday or normal

---

[7] "[U]nskilled work corresponds to an SVP [specific vocational preparation] of 1-2 . . . ." SSR 00-4p, 2000 WL 1898704, at *3.

workweek consistently, and so a limitation about the skill level of the work does not account for problems with attendance and stamina. *Id.* at 11-13.

But in a published opinion after *Haga*, the Tenth Circuit explained that asking whether the RFC "incorporates the numerous moderate limitations" indicated in a worksheet-style form is "the wrong question." *Smith v. Colvin*, 821 F.3d 1264 (10th Cir. 2016). The worksheet-style "notations of moderate limitations" in a consultant's opinion "served only as an aid to her assessment of residual functional capacity." *Id.* The court must "compare the administrative law judge's findings to [the doctor's] opinion on residual functional capacity, not her notations of moderate limitations." *Id*.

In *Smith v. Colvin*, the state agency consultant found that the claimant was moderately limited in the areas of concentration, persistence, and pace; working with others without getting distracted; completing a normal workday and workweek without interruption for psychologically based systems; and performing at a consistent pace without excessive rest periods (in other words, the same abilities Plaintiff alleges were not accounted for in this ALJ's RFC). *Id.* at 1268. In the narrative paragraph, the state agency consultant opined that the claimant could "engage in work that was limited in complexity." *Id.*

The ALJ assessed an RFC for "only simple, repetitive, and routine tasks." *Id.* at 1269. The Tenth Circuit found that although the ALJ "did not repeat the moderate limitations assessed by the doctor," affirmance was proper because the ALJ "incorporated these limitations by stating how the claimant was limited in the ability to perform work-related activities." *Id.*[8]

---

[8] The Court has explained at length in prior opinions why *Smith* and *Haga* are not inconsistent. *E.g.*, *Herrera v. Saul*, No. 18-cv-1080 SCY, 2019 WL 6468872, at *7 (D.N.M. Dec. 2, 2019). Because *Smith* is published, the Court must follow it over any unpublished opinions.

Based on *Smith*, the Court rejects Plaintiff's argument that the ALJ was required to either incorporate all of the doctors' worksheet-style moderate limitations or explain, for each moderate limitation, why she did not adopt that limitation. The question is not whether there is a conflict between the RFC and the worksheet-style moderate limitations in attendance or persistence; the question is whether the RFC matches the doctors' opinions on what kind of work Plaintiff *can* perform despite the doctors' previously assessed limitations. 821 F.3d at 1269 n.2. Here, the RFC for "SVP 1 or 2 jobs, with no fast paced production work, [and] occasional changes to the work setting" matches the doctors' opinions that Plaintiff "has sufficient intelligence and cognitive ability to understand, remember, and perform simple work tasks," AR 829 (Hughson); that she "has the capacity to understand, remember and follow basic work instructions . . . can concentrate adequately for routine tasks . . . [and] can adapt to routine workplace changes with advanced preparation," AR 131, 150 (Chavez); and that she can "understand, remember, and carry out simple instructions, make simple decisions, attend and concentrate for two hours at a time, interact adequately with co-workers and supervisors, and respond appropriately to changes in a routine work environment," AR 101, 113 (Simutis).

In short, all of these doctors thought Plaintiff could perform simple work despite their own assessment of moderate limitations. The ALJ agreed. The ALJ therefore did not err by stating that these opinions were "persuasive" without explicitly discussing all the moderate limitations in the doctors' worksheets relating to attendance, concentration, and persistence.

## II.     Function-by-function assessment

"The RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." SSR 96-8p, 1996 WL 374184, at *3. This means an RFC cannot be phrased solely in terms such as "sedentary," "light," or "heavy" work. *Id.* These terms are appropriate, but only after considering the claimant's ability

11

to do work as expressed in various areas of exertional and non-exertional functioning. *Id.* An appropriate RFC in the domain of non-exertional functioning must assess, among other things, "the abilities to . . . respond appropriately to supervision, co-workers and work situations." *Id.* at \*6.

Here, the RFC stated that Plaintiff "can occasionally interact with co-workers and supervisors." AR 207.[9] This is undoubtedly appropriate under SSR 96-8p, which requires ALJs to evaluate exactly this domain of functioning. Indeed, Plaintiff does not really argue the ALJ skipped the requirement to evaluate this function. Instead, Plaintiff argues that the RFC is erroneously expressed in terms of *frequency* of contact, rather than quality of contact. Doc. 19 at 15. Perhaps, Plaintiff argues, it is true that she can "occasionally" interact with coworkers, but that does not answer whether those interactions would be "appropriate."

In assessing the frequency with which Plaintiff could interact with supervisors and co-workers, the ALJ committed no error. The law clearly requires the ALJ to assess frequency of interactions in performing the function-by-function analysis:

> In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting *on a regular and continuing basis* (i.e., *8 hours a day*, for *5 days a week*, or an equivalent work schedule), and describe *the maximum amount* of each work-related activity the individual can perform based on the evidence available in the case record.

SSR 96-8p, 1996 WL 374184, at \*7 (emphasis added and footnote removed).

---

[9] Plaintiff also focuses on the limitation relating to interaction with the general public, but SSR 96-8p does not include "ability to interact with the general public" as a skill required for all work and thus one that must be included in the function-by-function analysis. *See also* 20 C.F.R. §§ 416.945(c), 404.1545(c) (listing what will be assessed in mental abilities in the RFC—a list that does not include any mention of interaction with the general public); *Nelson v. Colvin*, 655 F. App'x 626, 629 (10th Cir. 2016) ("unskilled work does not require" the ability to "interact appropriately with the public").

So, the ALJ did not err in discussing frequency. What Plaintiff's complaint amounts to is that the ALJ did not include in her statement that Plaintiff "can occasionally *appropriately* interact with co-workers and supervisors." But the word "appropriately" is inherent in the RFC. The requirement is that the ALJ evaluate work-related abilities: "Work-related mental activities generally required by competitive, remunerative work include the abilities to . . . respond *appropriately* to supervision, co-workers and work situations." *Id.* at *6 (emphasis added). There is no requirement or expectation that the ALJ assess abilities that are *not* critical to work-related functioning, such as the ability to engage in *in*appropriate social interactions. Conversely, if an ALJ found that a claimant can have no interactions with others, the Court would understand this to mean that the claimant can have no *appropriate* interactions with others in spite of the evidence that the claimant can, hypothetically, interact with family members or doctors at appointments. The Court can follow the adjudicator's reasoning: the RFC assessed Plaintiff's ability to "respond appropriately to co-workers and supervisors" and specified she can do so on an occasional basis.

Plaintiff cites no rule requiring the ALJ to explicitly add the word "appropriately" or face reversal. Plaintiff relies on *Gomez v. Berryhill*, Civ. No. 17-155 KK, Memorandum Opinion and Order, Doc. 27 at 25 (D.N.M. Jun. 13, 2018), for the proposition that "[l]ess interaction does not necessarily make for appropriate interaction." *See* Doc. 19 at 15. While this accurately quotes part of a sentence from the opinion, in context it is clear that the court did not adopt Plaintiff's argument that the word "appropriately" cannot be read into a frequency limitation. The *Gomez* court did not find any error in the ALJ's failure to write the word "appropriately" in the RFC. Rather, the court found that substantial evidence did not exist for the ALJ's finding that the claimant could interact appropriately with supervisors and coworkers on an occasional basis:

13

> Although the ALJ did not overlook Ms. Gomez's limitations related to her recurrent anger problems, the record evidence in this case demonstrates that merely decreasing Ms. Gomez's contact with supervisors, co-workers and the public to occasional, which can be as much as up to one-third of an eight-hour work day, fails to adequately address Ms. Gomez's limitations in her ability to respond appropriately. Less interaction does not necessarily make for appropriate interaction, and in light of the overwhelming evidence regarding Ms. Gomez's anger management problems and resulting behavioral extremes, the Court is not persuaded that the ALJ's mental RFC is supported by substantial evidence.

*Gomez*, Doc. 27 at 25 (citations and footnotes omitted).

In other words, the problem in that case was not lack of an appropriate function-by-function analysis: it was lack of substantial evidence for the functional analysis the ALJ did perform. *See id.* at 23-25 (describing the "overwhelming" evidence in favor of more restrictive limitations on social functioning in that case). Here, Plaintiff does not raise a substantial-evidence argument and indeed, explicitly disclaims making one. Doc. 19 at 17 ("Without a function-by-function assessment, it is not possible to ascertain whether the mental RFC is based on substantial evidence."). The Court declines to address issues not raised by Plaintiff.

## CONCLUSION

For the reasons stated above, Plaintiff's Motion To Reverse And Remand For A Rehearing With Supporting Memorandum, Doc. 19, is **DENIED**.

<br>

                                **STEVEN C. YARBROUGH**
                                **United States Magistrate Judge**
                                **Presiding by Consent**